ALBERT NOYES and others *vs.* BENJAMIN J. STAPLES and others.

*Vessels—when owners are liable for supplies.*

In order to make the master of a vessel the owner *pro hac vice* under a contract for sailing her on shares, he must have the exclusive control for the time being; otherwise, the owners will be held liable for necessary supplies furnished the vessel on their credit.

ON EXCEPTIONS.

ASSUMPSIT for the balance due for a stove furnished by the plaintiffs to the schooner Golden Rule, Nov. 17, 1868, while in the port of Bangor. The case was referred to the court reserving the right to except. James Greenlow, then master of the Golden Rule, went to the plaintiffs' store and desired to purchase a stove upon credit, which request the plaintiffs at first declined to accede to; but, upon Capt. Greenlow's statements that his schooner was loaded with potatoes and ready to sail, but could not do so without a new stove, and that he had no funds of his owners in his hands, and that it would take ten or fifteen days to obtain a remittance from Swan's Island, where they lived, whereas he could sail with that tide if he had the stove, while the delay would be very damaging, they finally assented, put the stove on board and took the

old one, giving credit for its value, and this suit was to recover the unpaid balance of the price. After the stove was sent to the wharf Capt. Greenlow said if there were any place in Boston where he could make payment out of the freight money he should receive on arrival there it would be much more convenient for him to do so; accordingly he signed a paper of this tenor:

"$23.00                                          BANGOR, Nov. 17, 1868.

Value received I promise to pay Seavey & Co., Boston, twenty-three dollars on account of Albert Noyes & Co., Bangor, Maine.

JAMES GREENLOW.
Schooner Golden Rule of Swan's Island."

The stove never was paid for, nor was any demand ever made upon Greenlow for payment, he not calling upon Seavey & Co. while in Boston.

The defendants showed that Greenlow was only temporarily in charge of the schooner during the sickness of Benjamin J. Staples, her regular commander; that Greenlow's arrangement with them was that " while she was mackereling the owners manned and provisioned her and the captain had three per cent of the net stock, but while she was coasting the captain manned and provisioned her and had three-fifths of what the vessel stocked;" that the vessel had always been sailed on these terms; that they had made a final settlement with Greenlow and paid him for the stove, he representing that he had a receipt for it which he had mislaid or lost. The presiding justice ruled that the vessel being let to the master on shares the plaintiffs could not maintain this action and ordered a nonsuit. The plaintiffs excepted.

*H. L. Mitchell*, for plaintiffs.

The amount claimed is small, but an important principle of law is involved in this suit. He who supplies necessaries to a vessel has not only the security of the master and owners but of the specific ship. *Rich* v. *Coe*, Cowper's Reports, 636.

The master generally carries with him the authority and credit of the owners upon the ordinary principles of agency; and it is

only when he, as charterer, has the exclusive control and entire management of the vessel that this relation of agency ceases and he is deemed the owner *pro hac vice.* *Emery* v. *Hersey*, 4 Maine, 407 ; *Lyman* v. *Redman*, 23 Maine, 289 ; *Reeves* v. *Davis*, 1 A. & E. 312.

If the case be one of pressing necessity it is of no consequence that it arises in a home port. *Arthur* v. *Barton*, 4 M. & W. 188 ; Abbott on Shipping (Perkins' ed.), 178 ; *Johns* v. *Simons*, 2 A. & E. 424 ; *Stonehouse* v. *Gent*, 4 A. & E. 431.

The creditors used due diligence. Abbott on Shipping, 179 ; *Jordan* v. *Young*, 37 Maine, 276.

The document signed by Capt. Greenlow to be sent to Seavey & Co. was no settlement for the stove. *Trustees, etc., in Dutton* v. *Kendrick*, 12 Maine, 381, and cases there cited.

*Peters & Wilson*, for\defendants.

The credit was given to the master; hence no charge of this stove was made on their books, they holding his note for it.

As Greenlow was sailing the craft on shares he was *pro hac vice* the owner of her. *Thompson* v. *Snow*, 4 Maine, 265 ; *Winsor* v. *Cutts*, 7 Maine, 261 ; *Williams* v. *Williams*, 23 Maine, 17 ; *Sproat* v. *Donnell*, 26 Maine, 185.

It makes no difference whether the contract of hiring be known to the parties furnishing the supplies or not. *Cutler* v. *Thurlo*, 20 Maine, 213 ; *McLellan* v. *Reed*, 35 Maine, 172. Nor how necessary the articles are. *Swanton* v. *Reed*, 35 Maine, 176 ; 5 Pick. 422 ; 6 Pick. 335 ; 12 Pick. 424 ; *James* v. *Bixby*, 11 Mass. 34.

DICKERSON, J. Assumpsit against the defendants, as owners of the schooner Golden Rule, for a stove sold and delivered to her master, for her use, and on their credit. The presiding judge ordered a nonsuit on the ground that the vessel was let to the master on shares.

The agreement between the master and owners was that the owners should man and provision her while she was mackereling,

Noyes v. Staples.

and the master should have three per cent of her net stock, but while she was coasting the master should man and provision her and have three-fifths of what the vessel stocked. There was no provision in the agreement that the master should have the control of the vessel pending this arrangement, or that he should decide when she should be engaged in the mackereling and when in the coasting business.

In order to make the master of a vessel owner *pro hac vice*, under a contract for sailing her on shares, he must have the exclusive control of her for the time being. This principle runs through all the recent authorities. *Thompson* v. *Snow*, 4 Maine, 269; *Winsor* v. *Cutts*, 7 Maine, 261; *Lyman* v. *Redman*, 23 Maine, 289; *Bonzey* v. *Hodgkins*, 55 Maine, 98.

The other point made by the counsel for the defendants, that the credit was given to the master, is not sustained by the evidence. One of the plaintiffs testified that the stove was furnished on the credit of the owners, and that it would not have been furnished on the master's credit. There is no evidence in the case to control this testimony. The taking of the master's due bill was at his solicitation, and for his accommodation, without any purpose to change the credit originally given. *Paine* v. *Dwinel*, 53 Maine, 52. *Exceptions sustained.*

CUTTING, WALTON, DANFORTH, and TAPLEY, JJ., concurred.